# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FREDERICK BANKS,

           Plaintiff,

           v.

UNITED STATES MARSHALS
SERVICE, et al.,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 15-127

District Judge David Stewart Cercone
Magistrate Judge Lisa Pupo Lenihan

ECF No. 10


## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss (ECF No. 10) filed by the United States of America; the United States Marshals Service; Director, United States Marshal; David Hickton, U.S. Attorney; Chief Judge Joy Flowers Conti; Judge Nora Barry Fischer; Eric Holder, Attorney General; USA Inspector General; Ken Salazar, U.S Department of the Interior; Director/Commissioner of Indian Affairs; and the Bureau of Indian Affairs be granted, and the Complaint be dismissed with prejudice as to the Federal Defendants.

## II.    REPORT

### A.    Factual Background/Procedural History

On or about November 17, 2014, Plaintiff Frederick Banks ("Banks"), proceeding pro se, filed this action in the Court of Common Pleas of Allegheny County,

Pennsylvania, at Case No. GD-14-021024. Plaintiff describes himself as an American Indian and member of the Lakota Sioux Tribe and a Tribal Official of the United Tribes of America. Compl., Intro. (ECF No. 1-2 at 3). In addition, Plaintiff states he is a second degree wicca, warlock high priest, and witchcraft practitioner. *Id.*

Names as defendants in this action are the United States of America; the United States Marshals Service; Director, United States Marshal; David Hickton, U.S. Attorney; Chief Judge Joy Flowers Conti; Judge Nora Barry Fischer; Eric Holder, Attorney General; USA Inspector General; Ken Salazar, U.S Department of the Interior; Director/Commissioner of Indian Affairs; and the Bureau of Indian Affairs (collectively the "Federal Defendants").[1] In addition to the Federal Defendants, the Complaint names as defendants Orlando Harper, Warden, Allegheny County Jail; Rich Fitzgerald, County Executive; County of Allegheny; Case Manager Schenk; Unit Manager 40, Cyndy McSwiggin, Supervisor; and the Allegheny County Jail (collectively, the "County Defendants"). Plaintiff is suing all Defendants in their official and individually capacities.

Plaintiff's claims against the Federal Defendants and allegations in support are summarized as follows.

---

[1] To the extent the unnamed defendants are deemed the equivalent of Joh Doe defendants, courts generally will disregard claims against them absent a showing by the plaintiff that they are indispensable to the litigation. *Young v. Quinlan*, 960 F.2d 351, 356 n. 9 (3d Cir. 1992) (citing *Kiser v. Gen. Elec. Corp.,* 831 F.2d 423, 426 n. 6 (3d Cir. 1987)), *superseded on other grounds by 42 U.S.C. § 1997e(a) as stated in Nyhuis Reno*, 204 F.3d 65, 71 n. 7 (3d Cir. 2000). Plaintiff has failed to indicate that the unnamed defendants are essential to this lawsuit, nor does the Court find that they are essential to resolving the pending motion. Accordingly, the Court recommends that the claims against them be dismissed.

On September 30, 2014, Plaintiff alleges that he was transferred to the Allegheny County Jail ("ACJ") by Defendant, Director of the United States Marshal Service ("USMS"). Compl. at ¶1. Plaintiff further alleges that he was held beyond his prison sentence expiration date of October 20, 2014 in violation of the Fifth and Eighth Amendments.[2] *Id.* Plaintiff further alleges that "Defendants acted with deliberate indifference because the warden, USMS and case manager failed to correct this." *Id.*

In addition, Plaintiff contends that "Defendants acted as 'bad men' in violation of Article I of the Sioux Treaty of Fort Laramie, 15 Stat. 635 (1868)[,]" and seeks to recover $10,000 on this claim against the United States of America under the Little Tucker Act, 28 U.S.C. § 1346. Compl. at ¶12. Plaintiff also asks this Court to issue an order authorizing the Commissioner/Director of Indian Affairs to "'cause the offenders to be arrested and punished according to the laws of the United States and to reimburse Plaintiff for the loss suffered." *Id.*

The remaining allegations do not implicate the Federal Defendants, but rather, involve complaints about the conditions of his confinement during his relatively brief incarceration at ACJ in October of 2014. Essentially, Plaintiff contends that while incarcerated at ACJ, (1) Case Manager Schenk denied him access to the courts by

---

[2] On October 29, 2014, Plaintiff was released on bail from the ACJ to the custody of the U.S. Probation Office, and ordered to report to the Renewal Center to commence service of his supervised release, in accordance with the terms and conditions of the judgment issued by Chief Judge Joy Flowers Conti in Criminal Action No. 04-176. *See* W.D.Pa. Crim. No. 03-245, Order dated 10/28/14 (ECF No. 672). Although these facts are not pled in the Complaint, the Court may take judicial notice of information contained in public court records in deciding a motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

preventing him from placing legal calls and by failing to have his legal and personal mail from NEOCC forwarded to ACJ; (2) the cashier failed to provide him with an indigent pack containing a pen and six first class envelopes as required by the inmate handbook; (3) the prison chaplain failed to procure various wiccan tools and a wiccan bible, and "Defendants" failed to provide a "volunteer wiccan chaplain", all of which prevented him from practicing his religion; and (4) that personal hygiene products/services were either inadequate (one unsanitized electric razor was shared by 120 inmates) or unavailable (a haircut and a new working shower).[3]  Compl. at ¶¶3-8. As a result of this conduct, Plaintiff contends that the County Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendment, as well as the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5.  Compl.  at ¶¶ 2-3, 5-9.

As to all Defendants, Plaintiff seeks monetary relief in the amount of $10 million for each violation, totaling $60 million, as well as punitive damages in the total amount of $180 million, plus costs, interest and fees.  Compl. at ¶11.  Plaintiff also requests declaratory relief ending the alleged violations.  *Id.*

On January 30, 2015, the United States of America removed this action to federal court pursuant to 28 U.S.C. §§ 1442 and 1446.   After several procedural matters were resolved, the Court entered an order on July 9, 2015 directing the Federal Defendants to

---

[3] Plaintiff claims to have exhausted all administrative remedies with regard to his complaints about the conditions of his confinement at ACJ.  Compl. at ¶2.

file a response to the Complaint. *See* ECF No. 8. On July 16, 2015, Federal Defendants

filed a Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal

Rules of Civil Procedure (ECF No. 10). In response, Plaintiff filed a timely Reply in

Opposition to the Motion to Dismiss (ECF No. 15). Thus, the motion to dismiss is ripe

for disposition.

### B. Legal Standard

The Federal Defendants have moved to dismiss the Complaint against them

pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, pleadings and, in

particular, pro se complaints, are to be liberally construed. *Abdul-Akbar v. McKelvie*, 239

F.3d 307, 322 (3d Cir. 2001)); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing

*Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (holding that, when a plaintiff files a

complaint pro se, the pleadings must be liberally construed and the Court must "apply

the applicable law, irrespective of whether the pro se litigant has mentioned it by

name"). Indeed, a pro se complaint "'however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551

U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404

U.S. 519, 520 (1972).

In a § 1983 or *Bivens*[4] action, the court must liberally construe the pro se litigant's

pleadings and "apply the applicable law, irrespective of whether a pro se litigant has

---

[4] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388
(1971). "'*Bivens* established that the victims of a constitutional violation by a federal

5

mentioned it by name." *Higgins*, 293 F.3d at 688 (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)).  See also *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution." (quoting *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993))).  However, there are limits to the court's procedural flexibility—"pro se litigants still must allege sufficient facts in their complaints to support a claim. . . they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted).

A motion to dismiss under Rule 12(b)(1) may be treated  as either a facial or factual challenge to the court's subject matter jurisdiction.  *Patsakis v. Greek Orthodox Archdiocese of America*, 339 F. Supp.2d 689, 692 (W.D. Pa. 2004) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  In the case at bar, Defendants are asserting a facial challenge, as evidenced by their briefs in support of their Motions to Dismiss.  In a facial attack, the court must consider the allegations of the complaint as true, in the light most favorable to the plaintiff, similar to a motion to dismiss under Rule 12(b)(6).  *Mortensen*, 549 F.2d at 891; *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 561 (3d Cir. 2005).

---

agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.'" *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)(quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)).  A *Bivens* action is the federal equivalent of a suit brought against state officials under Section 1983.  *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)) (other citation omitted); *see also Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001).

Federal Rule of Civil Procedure 12(b)(5) provides that a defendant may ask the court to dismiss a complaint when a plaintiff has failed to properly serve the defendant with the summons and complaint. "[T]he party asserting the validity of service bears the burden of proof on that issue." *Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488* (3d Cir. 1993) (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly* at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly* at 556-57). The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)

(construing *Twombly* in a civil rights context), and the Supreme Court's recent decision

in Iqbal:

> After *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id*. at 1949-50; *see also Twombly*, 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Courts generally consider only the allegations of the complaint, attached

exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit*

*Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations

omitted). Factual allegations within documents described or identified in the complaint

may also be considered if the plaintiff's claims are based upon those documents. *Id*. A

district court may consider these documents without converting a motion to dismiss

into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d

1410, 1426 (3d Cir. 1997).

**C.** **Analysis**

In support of their motion to dismiss, the Federal Defendants have advanced

several arguments. First, the Federal Defendants argue that the doctrine of sovereign

immunity bars Plaintiff's *Bivens* claims against (1) the United States and its agencies and

(2) the federal officers in their official capacities, and therefore, the Court lacks subject matter jurisdiction over those claims.  In addition, the Defendants argue that Plaintiff's *Bivens* claims should be dismissed against the federal officers in their individual capacities (1) for failure to allege personal participation in the alleged unlawful conduct; and (2) based on the doctrines of qualified immunity, absolute judicial immunity and/or quasi-judicial immunity.  Finally, as to Plaintiff's treaty-based and statutory claims, the Federal Defendants argue that these claims should be dismissed for failure to state a claim under Rule 12(b)(6).[5]  The Court will address each of these arguments in turn.

1.  <u>**Sovereign Immunity**</u>

a.  *Bivens* **Claims Against the United States & Its Agencies**

The Federal Defendants argue that Plaintiff's *Bivens* claims against the United States and its agencies are barred by sovereign immunity.  In support, the Federal Defendants submit that the United States and its agencies are immune from suit except to the extent they consent to be sued, and the terms of that consent, as set forth by Congress, establish the limits of the federal courts' subject matter jurisdiction to decide suits brought against the United States, citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Br. in Supp. of Fed. Defs.' Mot. to Dismiss ("Defs.' Br.") at 9 (ECF No. 11).  The Federal Defendant also cite as support, *United States v. Mitchell*, 463 U.S. 206, 212 (1983)

---

[5] The Court need not reach Defendants' additional argument—that the Complaint should be dismissed for failure to effectuate proper service on the Federal Defendants as required by Rule 4—in light of its conclusion that Plaintiff's claims are either barred by sovereign immunity, absolute judicial immunity, qualified immunity, quasi-judicial immunity, or for failure to state a claim under Rule 12(b)(6).

("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."), and *F.D.I.C v. Meyer*, 510 U.S. 471, 477-78 (1994) (United States and its agencies entitled to sovereign immunity from suit.) *Id.*

In response, Plaintiff argues that the Sioux Treaty of Fort Laramie, 15 Stat. 635 (1868) waives the sovereign immunity of the United States. Pl.'s Reply in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Reply) at ¶3 (ECF No. 15). In support, Plaintiff submits that the Federal Defendants in their personal and official capacities are not immune in this case because they stepped outside their respective authorities and duties when they committed the challenged actions, which is a matter for the jury to decide. *Id.*

It is incredulous to suggest that a treaty that was enacted, more than 100 years prior to the Supreme Court's opinion in *Bivens*, to provide redress for criminal acts of United States citizens against tribe members while on tribal land (*see* discussion, *infra*, in Section II, Part C, subpart 3), somehow trumps the sovereign immunity of the United States from constitutional torts. Plaintiff has not pointed, nor could he point, to any authority that supports his incredulous argument.

In *Bivens*, the United States Supreme Court implied a right of action directly under the Fourth Amendment to the United States Constitution to allow a victim of an unconstitutional search to sue federal officials personally for damages. "'*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.'" *Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006) (quoting

*Carlson v. Green*, 446 U.S. 14, 18 (1980)). The Supreme Court's "authority to imply a new constitutional tort, not expressly authorized by statute, is anchored in [its] general jurisdiction to decide all cases 'arising under the Constitution, laws, or treaties of the United States.'" *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (quoting 28 U.S.C. § 1331).

However, *Bivens* does not waive the sovereign immunity of the federal government, *Jaffee v. United States,* 592 F.2d 712, 717 (3d Cir. 1979), and *Bivens*-type actions against federal entities are routinely dismissed for lack of subject matter jurisdiction. *See Johnstone v. United States*, 980 F. Supp. 148, 151 (E.D. Pa. 1997) (explaining that *Bivens* actions "may only be maintained against federal officers; sovereign immunity bars such actions against the United States or agencies thereof.")

Accordingly, the *Bivens* claims against the United States, the United States Marshals Service and the Bureau of Indian Affairs are barred by sovereign immunity and therefore, this Court lacks subject matter jurisdiction over the *Bivens* claims. Thus, the Court recommends that these claims be dismissed with prejudice.

### b. *Bivens* Claims Against the Federal Defendants in Their Official Capacities

Plaintiff has also asserted *Bivens* claims against the following federal officials in their official capacities: U.S. Attorney David J. Hickton; former U.S. Attorney General Eric Holder; former Secretary of the Department of the Interior, Ken Salazar; Chief U.S. District Judge Joy Flowers Conti; and U.S. District Judge Nora Barry Fischer, in their official capacities. *See* Compl. at 1. In addition, Plaintiff has brought claims against

unnamed and unknown agency officials in their official capacities—the "Director, United States Marshal," "USA Inspector General," and "Director/Commissioner of Indian Affairs." Compl., Caption & Intro. Para., ECF No. 1-2 at 3. The Federal Defendants argue that Plaintiff's official capacity *Bivens* claims are also barred by the doctrine of sovereign immunity, and therefore, the Court lacks subject matter jurisdiction over these claims. The Court agrees.

It is well settled that actions brought against federal officers/agents in their official capacities are deemed to have been brought against the United States, and therefore, are barred by the doctrine of sovereign immunity, unless the United States has waived such immunity. *FDIC v. Meyer,* 510 U.S. 471, 478 (1994); *Hafer v. Melo*, 502 U.S 21, 25 (1991) (noting that a suit against an individual in his official capacity is tantamount to an action directly against the public entity which the official represents); *Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994) (same).

In the case at bar, the Federal Defendants submit that Plaintiff has not alleged that the United States has waived immunity with regard to his *Bivens*-type claims against the named Federal Defendants, nor has he identified any statute that waives immunity for such claims. *See, e.g., F.D.I.C.*, 510 U.S. at 478; *Clinton Cnty. Comm'rs v. United States Envtl. Protl. Agency*, 116 F.3d 1018,1021 (3d Cir. 1997). In response, Plaintiff submits that the Sioux Treaty of Fort Laramie waives the sovereign immunity of the United States. Pl.'s Reply in Opp'n at ¶3. However, a careful review of Plaintiff's Complaint reveals that he has not alleged any facts that show the United States has consented to suit for the constitutional violations alleged therein, nor has he identified,

12

either in the Complaint or his Reply, any statute that waives the United States' immunity from suit for the alleged constitutional torts. In this regard, Plaintiff's reliance on the Sioux Treaty of Fort Laramie as a statutory waiver of sovereign immunity is misplaced.[6]

As explained *infra*, the Sioux Treaty addresses specific bad acts committed against Native Americans on tribal lands, none of which is alleged against the Federal officials in the case at bar. Moreover, the Treaty was entered into between the United States and the different bands of the Sioux nation of Indians on April 29, 1868, and was ratified by the Senate and signed into law by the President in 1869,[7] more than 100 years prior to the Supreme Court's decision in *Bivens*. Therefore, neither President Johnson nor the Senate could have intended to waive the sovereign immunity of the United States for constitutional torts for which a cause of action did not exist when the treaty was signed. As such, the Sioux Treaty cannot be construed to effectuate a waiver of the United States' sovereign immunity from *Bivens* claims.

Plaintiff further submits that the Federal Defendants "in their personal and official capacities are not immune in this case because they stepped outside of their respective authorities and duties when they commited [sic] the challenged actions," which Plaintiff asserts is a matter for the jury to decide. *Id.* However, this is not a

---

[6] As noted *infra* in Section II, Part C, subpart 4, the Little Tucker Act, 28 U.S.C. § 1346(a)(2), does waive the United State's sovereign immunity for "bad-men" claims under the Sioux Treaty of Fort Laramie.

[7] On February 16, 1869, by resolution, the Senate did advise and consent to the ratification of the Treaty between the United States and the different bands of the Sioux nation of Indians made and concluded on April 29, 1868. 15 Stat. 635, 1869 WL 10665, at *7. Subsequently, President Andrew Johnson signed the Treaty into law on February 24, 1869. *Id.*

defense to sovereign immunity, and even if it were, Plaintiff has not pled any facts to support this conclusory statement.

Therefore, as the Federal Defendants have not consented to suit, and Plaintiff has failed to identify a federal statute that waives the sovereign immunity of the United States from *Bivens* claims, the Court finds that Plaintiff's official capacity claims against the U.S. Attorney David J. Hickton, former U.S. Attorney General Eric Holder, former Secretary of the Department of the Interior, Ken Salazar, Chief U.S. District Judge Joy Flowers Conti, U.S. District Judge Nora Barry Fischer, Director, United States Marshal, USA Inspector General, and Director/Commissioner of Indian Affairs,[8] are barred by the doctrine of sovereign immunity.   Accordingly, the Court lacks subject mater jurisdiction and therefore recommends that the official capacity claims against these Defendants be dismissed with prejudice.

### 2.    *Bivens* Claims Against Federal Defendants in Their Individual Capacities

Plaintiff has also sued the federal officials in their individual capacities.   Our sister court in the Middle District aptly summarized the law on *Bivens* actions:

> *Bivens* creates no substantive rights, but rather allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). A civil rights claim brought under *Bivens* is the federal counterpart to an action brought under 42 U.S.C. § 1983, and the same legal principles governing a § 1983 claim

---

[8] The Court further notes that Plaintiff has failed to allege any specific conduct attributable to the unnamed and unknown agency officials.

apply to a *Bivens* claim. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir.2001); *Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir.1975); *Cyrus v. Hogsten*, No. 06–2265, 2007 WL 88745, at *3 (M.D.Pa. Jan.9, 2007). To state a claim under *Bivens*, the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. *Brown*, 250 F.3d at 800; *Cyrus*, 2007 WL 88745, at *3.

Civil rights claims may only be brought against "persons." 42 U.S.C. § 1983. Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir.2005); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) (collecting cases).

*Naranjo v. Martinez,* No. 4:CV-08-1755, 2009 WL 4268598, at *  (M.D.Pa. Nov. 24, 2009).

Thus, government officials will not be held accountable for the misdeeds of their agents unless the  plaintiff shows either that the government official personally was involved in the constitutional violation or had actual knowledge of and acquiesced to a subordinate's violation.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70-71 (2001) (because "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations," federal officers are only subject to suit for constitutional violations if they are "directly responsible" for them).  In so doing, the plaintiff must set forth "[a]llegations of participation or actual knowledge and acquiescence . . . with

appropriate particularity." *Rode*, 845 F.2d at 1207; *see also Santiago v. Warminster Twp.*, 629 F. 3d 121, 130 (3d Cir. 2010) ("Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue.")

In the case at bar, the Federal Defendants submit that the Complaint is completely devoid of factual allegations to show personal participation by any of the named Federal Defendants in the allegedly unconstitutional conduct, and instead focuses on Plaintiff's grievances as to the conditions of his confinement at ACJ, specifically attributing allegedly unconstitutional conduct to certain named Allegheny County Defendants. The Federal Defendants argue, therefore, that the allegations are insufficient under *Iqbal* to state a plausible *Bivens* claim against them. Also, the Federal Defendants argue that Plaintiff's generic reference to all "defendants" throughout the Complaint is insufficient and does not give fair notice to any defendant of the specific grounds for the claims against him or her. In support of their argument, Defendants cite *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (explaining that "a plaintiff in a *Bivens* action is required to allege facts indicating that defendants were personally involved in the claimed constitutional violation," and rejecting the allegations that all "defendants violated Plaintiff's right because such allegations '"fail [] to link [the alleged constitutional violation] to any defendant, named or unnamed.'"); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (discounting allegations against "defendants" because individual defendants could not ascertain which unconstitutional

acts they were alleged to have committed); *Grieveson v. Anderson*, 538 F.3d 763,778 (7th Cir. 2008) (rejecting "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct"); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (rejecting allegation that defendants "engaged in certain conduct" where complaint "mak[es] no distinction among the fourteen defendants charged").

In response, Banks states, in conclusory fashion, that "all federal defendants personally participated in the violations[.]" Pl.'s Reply in Opp'n at ¶2. Plaintiff's argument is wholly lacking any factual or legal basis. A careful review of the Complaint reveals that Plaintiff has failed to allege any factual allegations with respect to U.S. Attorney David J. Hickton, former U.S. Attorney General Eric Holder, former Secretary of the Department of the Interior, Ken Salazar, Chief U.S. District Judge Joy Flowers Conti, and U.S. District Judge Nora Barry Fischer, other than merely naming them as Defendants, let alone allege any facts that show personal participation by these Defendants in the allegedly unconstitutional conduct. As such, Plaintiff's allegations are, at best, naked assertions or mere conclusory statements devoid of any factual support. *See Iqbal*, 556 U.S. at 678 (noting that courts should also disregard "naked assertion[s] devoid of 'further factual enhancment'" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" (quoting *Twombly*, 550 U.S. at 557)). Therefore, Plaintiff has failed to state plausible *Bivens* claims against these Defendants. Moreover, given that the vast majority of the allegations in his Complaint relate to his grievances over conditions of confinement at the ACJ,

Plaintiff could not plausibly allege that any of these Defendants personally participated in the allegedly unconstitutional conduct.

Accordingly, because Plaintiff has failed to allege facts showing that each of these Defendants personally participated in the allegedly unconstitutional conduct, the Complaint does not state plausible *Bivens* claims against U.S. Attorney David J. Hickton, former U.S. Attorney General Eric Holder, former Secretary of the Department of the Interior, Ken Salazar, Chief U.S. District Judge Joy Flowers Conti, and U.S. District Judge Nora Barry Fischer, in their individual capacities. Therefore, the Court recommends that the *Bivens* claims against these Defendants in their individual capacities be dismissed.

### 3. Sioux Treaty of Fort Laramie

Next, the Federal Defendants argue that Plaintiff's treaty-based claim also fails to state a claim. Plaintiff alleges that he is a "Lakota Sioux Native American," a member of the "Oglala Sioux Tribe,"[9] and a "Tribal Official of the United Tribes of America."[10] Compl. at ¶ 1; Pl.'s Reply in Opp'n at ¶3. The sum and substance of his treaty-based claim is that "Defendant's [sic] acted as 'bad men' in violation of Article I of the Sioux Treaty of Fort Laramie, 15 Stat 635 (1868)[,]" and he seeks an order from this Court to compel the "'Commissioner' Director of Indian Affairs at the Bureau of Indian Affairs to

---

[9] The "Oglala Sioux Tribe" is not one of the Sioux Tribes that was a party to the Sioux Treaty of Fort Laramie. However, the Ogallalah band of Sioux was a party to that treaty. *See* 15 Stat. 635.

[10] It appears that neither the Lakota Sioux Tribe nor the Tribal Official of the United Tribes of America is a federally recognized tribe. *See Indian Entities Recognized & Eligible to Receive Services From the United States Bureau of Indian Affairs*, 80 Fed. Reg. 1942-02 (Jan. 14, 2015).

'cause the offenders to be arrested and punished according to the laws of the United States' and to reimburse plaintiff for the loss sustained."  Compl. at ¶12.[11]

The "bad men" provision in Article I of the Sioux Treaty provides in relevant part:

> If bad men among the whites, or among other people subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States will, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington city, proceed at once to cause the offender to be arrested and punished according to the laws of the United States, and also reimburse the injured person for the loss sustained.

Treaty between the United States of America and Different Tribes of Sioux Indians art. I, *opened for signature* April 29, 1868, 15 Stat. 635 (entered into force Feb. 24, 1869) [hereinafter "Sioux Treaty"].[12]  As this Court explained in *Banks v. U.S. Probation Dep't*:

> [T]he "bad men" clause was a pact "between two nations, and each one promised redress for wrongs committed by its nationals against those of the other nation."  *Richard v. United States*, 677 F.3d 1141, 1148 (Fed. Cir. 2012).  As the Court of Federal Claims has explained, it would seem that the "primary intent of both 'bad men' provisions was to guard against affirmative criminal acts, primarily murder, assault, and theft of property."  *Garreaux v. United States*, 77 Fed. Cl. 726, 736 (2007).

---

[11] Plaintiff also seeks to recover damages of $10,000 against the United States on his treaty-based claim pursuant to the Little Tucker Act, 28 U.S.C. § 1346.  Compl. at ¶12.  Plaintiff's request for damages pursuant to the "bad men" clause is discussed *infra* under "Little Tucker Act Claim."

[12] Article I also contains a second "bad men" provision which provides relief for wrongs committed by Indians, but it is not implicated here.

> A treaty with a Native American tribe is a contract, *Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 675 (1979), and the "bad men" clause gives Native Americans a right to seek redress directly from the United States for wrongs that are perpetrated by United States citizens against a tribe member while on tribal land. *See Richard v. United States*, 677 F.3d 1141, 1153 (2012).

*Banks v. U.S. Probation Dep't*, Civ. A. No. 2:13-cv-1199, 2013 WL 5303953, at *3-*4 (W.D. Pa. Sept. 19, 2013).

The Federal Defendants argue that Plaintiff has not alleged that he was residing on any of the Sioux reservations, that he is enrolled in any of the federally recognized Sioux tribes who possess those reservations, or that the alleged "wrong" occurred within a Sioux reservation, citing in support *Banks*, 2013 WL 5303953, at *4 n. 5 (citing *Pablo v. United States*, 98 Fed. Cl. 376 (2011) (denying relief to Indian who was assaulted by federal agent finding that the Fort Sumner Treaty provided protection to Indians residing on the reservation, and injured Indian neither resided nor was assaulted on the reservation)). Relying on *Garreaux*, 77 Fed. Cl. at 736, the Federal Defendants further argue that the "wrong" alleged here is not the type of wrong which courts have found to have been contemplated within the meaning of the Treaty. Finally, the Federal Defendants submit that the record does not indicate that Plaintiff submitted proof of any wrong to the Commissioner of Indian Affairs as required by Article I of the Sioux Treaty. In support, Defendants rely on *Elk v. United States,* 70 Fed. Cl. 405, 407 (2006), and *Hebah v. United States,* 428 F.2d 1334, 1340 (Fed. Cl. 1970).

In response, Plaintiff argues that all rules, regulations, constitutional provisions and statutes/treaties are to be construed liberally in favor of an American Indian, citing *Daney v. United States*, 370 F.2d 791 (10th Cir. 1966), and *Choate v. Trapp*, 224 U.S. 665, 675 (1912).[13] Plaintiff further contends that it does not matter whether the violations occurred on or off the reservation or in Indian country to invoke the Indian Canon. For support, Plaintiff relies on *United States v. Holliday*, 70 U.S. 407 (1865),[14] for the proposition that the court dismissed a federal case against a Native American who committed an alleged violation outside of a reservation.

Although Plaintiff is correct that treaties are to be construed liberally in favor of Native Americans with ambiguities resolved in their favor, "the Court cannot rewrite or expand treaties beyond their clear terms to remedy a claimed injustice." *Garreaux*, 77 Fed. Cl. at 737 (citing *Choctaw Nation of Indians v. United States*, 318 U.S. 423, 432 (1943); *Herrera v. United States*, 39 Fed. Cl. 419, 421 (1997)); *see also Elk,* 70 Fed. Cl. at 408 n. 2 (citing *Washington V. Wash. State Com. Passenger Fishing Vessel Ass'n,* 443 U.S. 658, 675-676 (1979); *Winters v. United States,* 207 U.S. 564, 576-577 (1908); *Minnesota v. Mille Lacs Band of Chippewa Indians,* 526 U.S. 172, 194 n. 5 (1999)). Several courts have construed "bad men" provisions in the Sioux Treaty and other treaties between the United States and Native American tribes and determined that the "wrongs" must have been committed on tribal lands in order to seek relief under that provision. *See, e.g., Jones v.*

---

[13] Plaintiff did not provide any volume or page citations for either of these cases. After conducting its own research, the Court found these reported cases based on the titles provided by Plaintiff.

[14] *Id.*

*United States,* 122 Fed. Cl. 490, 522 (2015) (construing Ute Treaties of 1863 and 1868 containing an identical "bad men" clause to that contained in Sioux Treaty); *Banks*, 2013 WL 5303953, at *4 n. 5 (citing *Pablo v. United States*, 98 Fed. Cl. 376, 381-82 (2011) (denying relief to Indian who was assaulted by federal agent finding that Fort Sumner Treaty provided protection to Indians residing on the reservation, and injured Indian neither resided nor was assaulted on the reservation)).

At the time of the alleged "wrongs," Plaintiff, by his own admission, was incarcerated in the ACJ. Therefore, the alleged "wrongs" could not have occurred on any Sioux reservation.

The Supreme Court's decision in *Holliday* does not hold to the contrary. In *Holliday*, the issue before the Supreme Court was whether the federal court had original jurisdiction over an indictment charging defendants with selling liquor to Indians in violation of a federal statute making it a crime to sell liquor to Indians. 70 U.S. at 413. The statute, as originally enacted, included a limitation that required that the sale occur in "the Indian country," but a subsequent amendment removed that limitation and, instead, substituted language requiring that the sale be made to an Indian who was under the charge of an agent or superintendent, in order to bring an indictment. *Id.* at 416. Although the parties conceded that the sales to the Indians did not occur in "the Indian country," the *Holliday* court concluded that the facts showed the Indians were under the charge of an agent or superintendent at the time of the prohibited liquor sales, and thus, within the parameters of the statute. *Id.* at 418-19. The Supreme Court further determined that the statute did not infringe on the States' police powers, but

22

rather, "profess[ed] to regulate traffic and intercourse with the Indian tribes[,]" and, as such, was a valid regulation of commerce between the United States and the Indian tribes. *Id.* at 417. Unlike the case at bar, *Holliday* does not involve an interpretation of a "bad men" provision in the Sioux Treaty or any other treaty for that matter, and it involves a constitutional challenge to the United States' power to regulate commerce. As such, *Holliday* is inapposite to the case at bar.

Moreover, Plaintiff has not alleged sufficient facts stating who the "bad men" are, much less showing that they qualify as "bad men" under the Treaty. Rather, Plaintiff merely states that "Defendant's acted as 'bad men' in violation of Article I." Compl. at ¶12. This is insufficient. *See Garreaux*, 77 Fed. Cl. at 737 (claim asserted "against the federal government or HUD as an entity or against unnamed HUD officials" was insufficient to establish the identities of the "bad men"). "To properly bring a 'bad men' claim, the plaintiff first must identify particular individuals as 'bad men.'" *Jones*, 122 Fed. Cl. at 520 (citing *Garreaux*, 77 Fed. Cl. at 737); *Hernandez*, 93 Fed. Cl. 193, 200 (2010) (citing *Ex parte Kan-gi-shun-ca*, 109 U.S. 556, 567 (1883)). In construing the Sioux Treaty, the Federal Circuit Court of Appeals concluded that the "bad men" provisions are not limited to agents, employees, or representatives of the United States, but federal agencies cannot be "bad men" as they are not persons. *Richard v. United States*, 677 F.3d 1141, 1153 (Fed. Cir.2012).

Here, Plaintiff has named 18 defendants in this action—14 of which are individuals, plus the United States, a federal agency, a county government and a county jail. Of those 14 individual defendants, three are unnamed. Plaintiff's treaty-based

claim is set forth at the end of his Complaint as an "Additional Separate Claim." In light of these facts, merely identifying "Defendants" as the "bad men" in his treaty-based claim is insufficient, as it includes parties who are not "bad men" under the Treaty[15] or who have been named only by title.

Finally, Plaintiff has failed to allege facts showing that a "wrong" was committed within the meaning of the Treaty. A "wrong," as contemplated by the Sioux Treaty, means affirmative criminal acts, but not omissions or negligent acts. *Jones,* 122 Fed. Cl. at 519 (citing *Garreaux*, 77 Fed. Cl. at 736 (discussion Sioux Treaty); *Hernandez v. United States*, 93 Fed. Cl. 193, 200 (2010) ("In order to bring action under the [Sioux] Treaty a Native American must be a victim of an affirmative criminal act, and the person committing the act must be a specific white man or men.")). The "wrongs" allegedly committed by any the individual Defendants consists of either *Bivens* claims, Section 1983 claims, or claims under the First, Fifth, Eighth, and Fourteenth Amendments. However, none of these alleged "wrongs" constitutes an affirmative criminal act, as contemplated by the Sioux Treaty.

Accordingly, the Court finds that Plaintiff's has failed to state a cognizable claim under the "bad men" provision of Article I of the Sioux Treaty, and therefore, recommends that Plaintiff's treaty-based claim be dismissed with prejudice.[16]

---

[15] The United States, the United States Marshal Service, the County of Allegheny, and the Allegheny County Jail do not qualify as "bad men" as they are not persons.

[16] The Court further notes that Plaintiff has not asserted in his Complaint that he made "proof" of the alleged "wrongs" to the agent and forwarded such proof to the Commissioner of Indian Affairs in Washington, D.C. Although Plaintiff need not await

## 4.    Little Tucker Act Claim

As noted above, Plaintiff also seeks to recover damages of $10,000 against the

United States on his treaty-based claim pursuant to the Little Tucker Act, 28 U.S.C. §

1346(a)(2).  Compl. at ¶12.   Section 1346(a)(2) provides in relevant part:

> (a) The district courts shall have original jurisdiction,
> concurrent with the United States Court of Federal Claims,
> of:
> . . .
>
> (2) Any other civil action or claim against the United
> States, not exceeding $10,000 in amount, founded either
> upon the Constitution, or any Act of Congress, or any
> regulation of an executive department, or upon any
> express or implied contract with the United States, or for
> liquidated or unliquidated damages in cases not
> sounding in tort, . . ..

28 U.S.C. §1346(a)(2).  Plaintiff has limited his damages request to $10,000 on this claim,

thereby invoking the original jurisdiction of this Court.

Although the Little Tucker Act provides jurisdiction for damage suits against the

United States, a plaintiff must assert a substantive right created by some money-

mandating constitutional provision, statute or regulation that has been violated, or an

express or implied contract with the United States, in order to have a viable claim under

the Act.  *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (citing

*United States v. Connolly*, 716 F.2d 882, 885 (Fed. Cir. 1982) (in banc), *impliedly overruled*

---

a decision from the Commissioner before filing suit, *see Elk,* 70 Fed. Cl. at 407, he must
at least provide notice to the Commissioner before filing a treaty-based claim in federal
court, *id.* (in damages action under "bad men" clause of Sioux Treaty, a condition of
receiving reimbursement under the Treaty "plainly requires that 'proof [be] made to the
agent and forwarded to the Commissioner of Indian Affairs'"); *Hebah v. United States,*
428 F.2d 1334, 1340 (Ct. Cl. 1970).

*on other grounds in Ministerio Roca Solida v. United States*, 778 F.3d 1351 (Fed. Cir. 2015); *see also Moose v. United States*, 674 F.2d 1277, 1280 (9th Cir. 1982) (Section 1346(a)(2) is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.") (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976));[17] *Graham v. Henegar*, 640 F.2d 732, 735 (5th Cir. 1982) (same) (quoting *Testan, supra*). Thus, "the asserted entitlement to money damages depends upon whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " *Moose*, 674 F.2d at 1280 (quoting *Testan,* 424 U.S. at 400) (quoting *Eastport Steamship Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967))); *see also Graham*, 640 F.2d at 735-36 ("Therefore, the scope of a Tucker Act claim must be determined by looking to the source of the substantive right upon which the claim is based.")

The Federal Defendants argue that Plaintiff's Little Tucker Act claim should be dismissed because this action is one seeking money damages for constitutionally based torts, and therefore, the Little Tucker Act is inapplicable. In support, the Federal Defendants cite *Hairston v. United States*, 99 Fed. Cl. 695, 697-98 (2011) for the proposition that "Section 1346(a) does not apply to suits based upon …*Bivens*, or the Fifth or Eight Amendments, and therefore, it does not support subject matter jurisdiction of [plaintiff's] claims in this Court." (internal quotation marks omitted).

---

[17] As the court of appeals noted in *Moose,* the Supreme Court in *Testan* was dealing with 28 U.S.C. § 1491, the Court of Claims portion of the Tucker Act, rather than with § 1346(a)(2), which was involved in *Moose*. 674 F.2d at 1280 n. 4. The court of appeals concluded that the Supreme Court's reasoning applied with equal force to both sections. *Id.* (citing *Duarte v. United States*, 532 F.2d 850, 851 n.2 (2d Cir. 1976)).

In response, Plaintiff submits that the "[L]ittle Tucker Act applies to the Ft. Laramie Treaty __ to the Torts."[18]  Pl.'s Reply in Opp'n at ¶4.  Giving Plaintiff the benefit of the doubt, it appears that he is attempting to argue that the Little Tucker Act applies to his treaty-based claim, but not to the tort based claims.  Plaintiff further submits that "neither the Federal Defendants nor the Judicial Officers are immune from suit because for instance the Judicial Officers were acting outside of all or any jurisdiction when the violations were commtted [sic]."  *Id.*  In addition, Plaintiff argues that the U.S. Marshals held him in prison beyond his sentence and thus are liable in this case as pled in the Complaint.  *Id.*  While Plaintiff's last two arguments lack merit,[19] Plaintiff's initial argument deserves consideration.

The Court notes that Plaintiff has expressly stated in his Complaint that his Little Tucker Act claim is based on his claim under the "bad men" provision in the Sioux Treaty, not, as the Federal Defendants argue, on constitutionally based tort claims.  The

---

[18] The Court is unable to decipher the handwritten word which appears where the blank line is positioned.

[19] It may well be that Plaintiff intended to raise these arguments in response to the Federal Defendants' immunity arguments.  However, to the extent Plaintiff intended to raise these arguments with regard to the Federal Defendants' request for dismissal of his Little Tucker Act claim, these arguments miss the mark.  The United States has expressly waived immunity under the Little Tucker Act for damages claims that meet the requirements of Section 1346(a)(2), and the Little Tucker Act makes clear that only the United States can be sued under that Act.  The immunity of the federal judges is not implicated here because, in the first instance, *Bivens* does not provide a money-mandating basis for Plaintiff's damages claim under the Little Tucker Act, since *Bivens* actions can only be brought against individual federal officers.  *Cunningham v. United States,* No. 11-330C, 2011 WL 5825147, *2 (Fed. Cl. Nov. 16, 2011)(citing *Brown v. United States,* 105 F.3d 621, 624 (Fed. Cir. 1997).  Plaintiff's third argument merely restates his conclusory allegation in the Complaint that the U.S. Marshals are liable in this case because they held him in prison beyond his sentence date.

Court of Federal Claims has recognized on several occasions that "bad men" treaty-based claims create a substantive right to monetary damages based upon a money-mandating source within the applicable treaty, and therefore, provide a proper basis for recovery against the United States under the Little Tucker Act and/or Tucker Act.[20]  *See, e.g., Garreaux*, 77 Fed. Cl. at 735  ("Given the similar language in Article I among the various Indian treaties, there is little doubt that this Court has jurisdiction of a proper claim brought under the 'bad men' provision of Article I of the [Sioux] Treaty") (citing *Elk v. United States*, 70 Fed.Cl. 405, 405–07 (2006) (finding jurisdiction under the Tucker Act over a claim brought under Article I of the Sioux Treaty); *Zephier v. United States*, No. 03–768L, at 2–3, 8, 13–14 (Fed.Cl. Oct. 29, 2004) (finding jurisdiction under the Tucker Act over a claim brought under the Sioux Treaty, but dismissing for failure to exhaust administrative remedies)).   Therefore, because the "bad men" clause of the Sioux Treaty contains a money-mandating provision, the only issue for this Court to decide vis a vis Plaintiff's Little Tucker Act claim is whether that claim falls within the reach of the "bad men" provision of Article I of the Sioux Treaty.   *Id.*

To succeed on his claim under the Little Tucker Act, Plaintiff must prove the elements of his claim under the "bad men" clause of the Sioux Treaty, which at the motion to dismiss stage, means he must allege sufficient facts to establish a plausible

---

[20] The pertinent portions of the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and the Tucker Act, 28 U.S.C. §1491, are the essentially the same--both waive sovereign immunity for the same delineated actions for monetary relief against the United States. The difference between them is that the Little Tucker Act allows an action to be brought in a federal district court as long as the claim does not exceed $10,000, while the Tucker Act does not contain any monetary restriction but authorizes actions to be brought only in the Court of Federal Claims.  *Doe v. United States*, 372 F.3d 1308, 1312 (Fed. Cir. 2004).

claim. However, as noted in Part 3 above, this Court has already analyzed Plaintiff's treaty-based claim and has determined that Plaintiff failed to state a cognizable claim under the "bad men" clause of the Sioux Treaty. *See supra* Section II, Part C, subpart 3. Therefore, the Sioux Treaty cannot provide the substantive right needed to recover under the Little Tucker Act. As such, Plaintiff is left without any identifiable money-mandating source upon which to base his damages claim against the United States under the Little Tucker Act.[21] Accordingly, the Court is constrained to recommend dismissal of the Little Tucker Act claim with prejudice.

### 5. Qualified Immunity

In further support of their motion to dismiss, the Federal Defendants argue that they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlan v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity operates to ensure that, before they are subjected to suit, government officials are put on notice that their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. "If the law was clearly established, the

---

[21] *See* Note 19, *supra.*

immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19. "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna, __ U.S. __*, 136 S.Ct. 305, 308 (2015) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In determining whether qualified immunity applies, the courts conduct a two-pronged inquiry. *Pearson*, 555 U.S. at 232; *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). First, the court must determine "whether the facts that the plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson,* 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Spady*, 800 F.3d at 637 (quoting *Pearson, supra*). "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [government official] is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002). If, however, the plaintiff can establish a constitutional violation, then the court must proceed to the second prong and determine "'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Spady*, 800 F.3d at 637 (quoting *Pearson*, 555 U.S. at 232). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) ("the question is whether 'a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession.'") (quoting *Sharrar v.*

*Felsin,* 128 F.3d 810, 826 (3dCir. 1997)(other citations omitted)). "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). In conducting this analysis, courts have the discretion to decide which of the two prongs should be addressed first based on the circumstances of the particular case. *Pearson*, 555 U.S. at 236; *see also Spady,* 800 F.3d at 637 (citing *Pearson*).

A defendant has the burden to establish that he or she is entitled to qualified immunity. *Burns v. Pa. Dept. of Corrections*, 642 F.3d 163, 176 (3d Cir.2011). "[T]he defense of qualified immunity is available only for damages claims—not for claims requesting prospective injunctive relief." *Hill v. Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006). In the case at bar, it appears that Plaintiff is seeking only money damages from the individually named Federal Defendants for the alleged constitutional violations.

The Federal Defendants' qualified immunity argument focuses only on the first inquiry—whether Plaintiff has set forth a plausible constitutional violation. The crux of their argument is that Plaintiff has failed to allege that any of the named Federal Defendants personally participated in alleged violations of clearly established statutory or constitutional rights. The Federal Defendants point out that although Plaintiff attributes complaints about the conditions of confinement at ACJ to specific Allegheny County Defendants, he altogether fails to attribute the alleged unconstitutional conduct and statutory violations to any of the named Federal Defendants. *See, e.g.*, Compl. ¶ 3. The Federal Defendants further contend that Plaintiff could not do so in light of their respective positions and duties. Therefore, because Plaintiff has failed to and cannot plausibly allege that the named Federal Defendants violated statutory or constitutional

31

rights, the Federal Defendants maintain that they are entitled to qualified immunity and should be dismissed from this action.

Plaintiff's response to this argument, as can best be gleaned from his Reply, appears to be that "[n]either the Federal Defendants nor Judicial Officers are immune from suit because for instance the Judicial Officers were acting outside of all or any jurisdiction when the violations were commtted [sic]. The U.S. Marshals held Plaintiff in prison beyond his sentence and thus are liable in this case as pled in the Complaint." Pl.'s Reply in Opp'n at ¶4. However, as discussed below, the Judicial officers are entitled to absolute judicial immunity, as Plaintiff does not set forth any factual allegations in the body of the Complaint as to the Judicial Defendants, let alone any factual allegations showing they were acting outside of their jurisdiction. In addition, Plaintiff's reference to the "U.S. Marshals" does not identify any particular person but refers to federal agency, which is shielded from liability under *Bivens* by sovereign immunity. *See supra*, Section II, Part C, subpart 1.a.

Earlier in his Reply, Plaintiff also states that "all the federal defendants personally participated in the violations . . .." Pl.'s Reply in Opp'n at ¶2. However, this Court has already found that Plaintiff has failed to allege any facts showing that Defendants U.S. Attorney David J. Hickton, former U.S. Attorney General Eric Holder, former Secretary of the Department of the Interior, Ken Salazar, Chief U.S. District Judge Joy Flowers Conti, and U.S. District Judge Nora Barry Fischer personally participated in the allegedly unconstitutional conduct, and therefore, the Complaint fails to state plausible *Bivens* claims against these Defendants in their individual

capacities.  *See supra*, Part II, Section C, subpart 2.  Since the Complaint fails to set forth a plausible constitutional violation, the Court need not proceed to the second prong of the analysis.  Accordingly, the Court finds that the individually named Federal Defendants are entitled to qualified immunity.

## 6. Absolute Judicial Immunity

Defendants Chief Judge Joy Conti and Judge Nora Barry Fischer submit that they are entitled to absolute judicial immunity from this lawsuit.

Under the doctrine of absolute judicial immunity, a judicial officer has absolute immunity from suit for actions taken in his or her judicial capacity.  *See Mireles v. Waco*, 502 U.S. 9, 12 (1991); *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (citing *Mireles*, 502 U.S. at 12); *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000) ("The Supreme Court has long recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts.") (citations omitted).  A judge does not forfeit that immunity simply because his or her action was erroneous, done maliciously, or exceeded his or her authority.  *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).  Judicial immunity does not apply to nonjudicial actions or to actions, that, while judicial in nature, are taken in the complete absence of all jurisdiction.  *Mireles, 502 U.S. at 12*; *Gallas, 211 F.3d at 768*.  Whether an act is a judicial one is determined by whether the action is typically one performed by a judge and whether the parties thought they were dealing with a judge acting in his judicial capacity.  *Stump*, 435 U.S. at 362.

The Judicial Defendants argue that Plaintiff's claims against them fail as a threshold matter because Plaintiff has done nothing more than name them in the

caption of the Complaint, and that while Plaintiff specifically attributes allegedly

unconstitutional conduct to certain named Allegheny County Defendants, there are no

specific allegations as to either of them in the body of the Complaint. As such,

Plaintiff's Complaint is woefully deficient under *Twombly*, 550 U.S. at 555, and *Phillips*,

515 F.3d at 234. In addition, the Judicial Defendants maintain that their actions clearly

do not fall within either of the two exceptions to judicial immunity. It is beyond dispute

that they were acting in their capacity as judges with respect to Plaintiff's federal

criminal cases over which they had jurisdiction. In this regard, they engaged in

quintessentially judicial acts for which they are immune. *See Azubuko v. Royal*, 443 F. 3d

302, 303 (3d Cir. 2006).

The Court agrees with the Judicial Defendants. Plaintiff has not alleged any facts

in his Complaint, nor can he, that would prevent the Judicial Defendants from invoking

absolute judicial immunity. Accordingly, Chief Judge Conti and Judge Fischer should

be dismissed as Defendants from this action with prejudice.

### 7.    Quasi-Judicial Immunity

Finally, the Federal Defendants argue that to the extent the Complaint can be

read to allege that an official of the U.S. Marshals Service somehow wrongfully

transferred Plaintiff to the ACJ and held him there beyond his federal prison sentence in

violation of his rights, that official is entitled to immunity. The Federal Defendants

further submit that where, as here, a U.S. Marshals Service official takes actions in

connection with a criminal defendant's federal criminal court proceedings, that official

is entitled to quasi-judicial immunity, citing as support *United Steelworkers of Am. v.*

*Bishop*, 598 F. 2d 408,414 (5th Cir. 1989) (U.S. Marshal entitled to derivative immunity in action challenging magistrate judge's order), and *King v. Thornburg*, 762 F. Supp. 336, 341-43 (S.D. Ga. 1991) (deputy U.S. Marshal was protected by absolute quasi-judicial immunity for following magistrate judge's verbal order). Here the Federal Defendants argue that the U.S. Marshals official was obligated to transfer Plaintiff to the ACJ so that he could appear in federal court for hearings on the revocation of his supervised release in W.D.Pa. Criminal Action No. 03-245. As such, the Federal Defendants maintain that the U.S. Marshals official was performing a ministerial function that the official was obligated by law to perform, and therefore, is entitled to quasi-judicial immunity.

Plaintiff has not responded to this argument, other than to state that the "U.S. Marshals held [him] in prison beyond his sentence and thus are liable in this case as pled in the complaint." Pl.'s Reply in Opp'n at ¶ 4. Besides making this same allegation in the Complaint, Plaintiff alleges that "Defendants acted with deliberate indifference because the warden, USM and Case manager failed to correct this." Compl. at ¶ 1. The Complaint does not contain any other allegations specifically directed to or implicating the U.S. Marshals Service or any official thereof.

Quasi-judicial immunity covers those who "perform functions closely associated with the judicial process," *Cleavinger v. Samaar*, 474 U.S. 193, 200 (1985), and whose functions are "so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune," *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir.1994) (extending quasi-judicial immunity to court administrator considered to be "acting as an arm of the court"). Such immunity is extended to an official who

"'acts pursuant to a valid court order because the act of 'enforcing or executing a court order is intrinsically associated with a judicial proceeding.'"  *Tilley v. Allegheny County Jail,* Civ. A. No. 09-299,  2010 WL 3522115, *6 (W.D.Pa. Sept. 8, 2010) (quoting *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir.2000) (quoting *Bush,* 38 F.3d at 847)). *See also Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir.1980) ("Judicial immunity extends as well to those who carry out the orders of judges."); *Roland v. Phillips,* 19 F.3d 552, 556 (11th Cir. 1994) (holding that "law enforcement personnel, acting in furtherance of their official duties and relying on a facially valid court order, are entitled to absolute quasi-judicial immunity.").  *Cf. Waits v. McGowan*, 516 F.2d 203, 206–07 (3d Cir.1975) (person directly involved in the judicial process may be covered by judicial immunity where he is performing a ministerial function at judge's direction).

In *Tilley,* the court found held that the marshal was entitled to quasi-judicial immunity from claims arising out of the transportation of the defendant from the ACJ to the courthouse pursuant to a court directive.  2010 WL 3522115, at *6.  *See also Muhammad v. U.S. Marshals Service,* 385 F. App'x 70, 73 (3d Cir. 2010) (holding district court did not err in granting motion to dismiss filed by of U.S. Marshals Service on immunity grounds for deputy marshal's role in effectuating a federal writ of habeas corpus ad prosequendum) (citing *Hamilton v. Leavy,* 322 F.3d 776, 782-83 (3d Cir. 2003)); *Bowers v. United States,* 931 F.Supp. 2d 358, 367-68 (D. Conn. 2013) (deputy marshals who were present at plaintiff's residence and workplace to execute a valid court order constituted conduct that had "'an integral relationship with the judicial process'" and thus, they were entitled to quasi-judicial immunity) (quoting *Roland,* 19 F.3d at 556).

Similarly here, Plaintiff's detention beyond his alleged sentence date was due to orders of court entered in Criminal Action No. 03-245 scheduling hearings on the government's request for clarification of Banks' detention status[22] and alleged supervised release violations. *See* W.D.Pa. Crim. No. 03-245, ECF Nos. 661, 663, 667, 668, 672, & 677. A hearing was held on October 28, 2014 on the alleged violation of supervised release and Banks' request for bail, at which time the Court ordered that Banks be released on bail to the custody of the U.S. Probation Office as of October 29, 2014 and report immediately to the Renewal Center to commence service of his supervised release. W.D.Pa. Crim. No. 03-245 at ECF No. 672. The U.S. Marshal Service transferred custody of Banks directly to the Renewal Center as ordered by the Court. W.D.Pa. Crim. No. 03-245 at ECF No. 677.

These public court records clearly show that the U.S. Marshal Service was acting in accordance with Judge Fischer's orders in Criminal No. 03-245. Accordingly, the Court finds that the U.S. Marshals official is entitled to quasi-judicial immunity, and therefore, recommends that the U.S. Marshals official be dismissed with prejudice from this civil action.

---

[22] The Court notes some discrepancy in Banks' claimed release date--in a notice and motion filed with the Court at Criminal No. 03-245 at ECF No. 663, Plaintiff represented to the Court that his scheduled release date at Criminal No. 04-176 was October 21, 2014, but alleged in his Complaint here that his scheduled release date was October 20, 2014. In Criminal No. 03-245, the United States Attorney determined his release date at Criminal No. 04-176 to be October 28, 2014, but requested clarification from the Court as to Banks' detention status on October 23, 2014, in light of the government's intention to proceed with the revocation of Banks' supervised release at Criminal No. 03-245. *See* W.D.Pa. Crim. No. 03-245, ECF No. 667 at ¶ 4.

D.     **Futility of Amendment**

As it appears that Plaintiff cannot allege any facts to establish plausible claims under either *Bivens*, the Sioux Treaty of Fort Laramie, or the Little Tucker Act against the Federal Defendants, for the above stated reasons, the Court finds that it would be futile to allow Plaintiff to amend his Complaint.  Therefore, the Court recommends that all claims against the Federal Defendants be dismissed with prejudice.[23]

III.     **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss (ECF No. 10) filed by the United States of America; the United States Marshals Service; Director, United States Marshal; David Hickton, U.S. Attorney; Chief Judge Joy Flowers Conti; Judge Nora Barry Fischer; Eric Holder, Attorney General; USA Inspector General; Ken Salazar, U.S Department of the Interior; Director/Commissioner of Indian Affairs; and the Bureau of Indian Affairs, be granted, and the Complaint be dismissed with prejudice as to the Federal Defendants.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrate Judges, the parties are allowed

---

[23] As the Federal Defendants also point out in their brief, the Fourteenth Amendment applies only to state actors, not federal actors.   *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 488 (E.D.Pa. 2005) ("The Fifth Amendment's Due Process Clause applies to the federal government . . . while the Fourteenth Amendment Due Process Clause applies to the states.") (citations omitted).  Thus, to the extent Plaintiff is asserting a Fourteenth Amendment claim against the Federal Defendants, that claims fails as a matter of law.  In addition, because the Court has decided the Federal Defendant's motion to dismiss on the merits, it need not reach their additional argument that the Complaint against them be dismissed for failure to establish validity of service.

fourteen (14) days from the date of service of this Report and Recommendation to file objections thereto. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file timely objections shall constitute a waiver of any appellate rights.

Dated: February 16, 2016                    BY THE COURT:

                                            __s/Lisa Pupo Lenihan_____
                                            LISA PUPO LENIHAN
                                            United States Magistrate Judge

cc:    Frederick Banks
       Allegheny County Jail
       #120759
       950 Second Avenue
       Pittsburgh, PA  15219
       *Via U.S. First Class Mail*

       All Counsel of Record
       *Via CM/ECF Electronic Mail*