**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

FREDERICK BANKS,

           Plaintiff,

           v.

UNITED STATES MARSHALS
SERVICE, et al.,

           Defendants.

Civil Action No.  15-127

District Judge David Stewart Cercone
Magistrate Judge Lisa Pupo Lenihan

ECF No. 22


## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss Complaint and to Strike Defendant Allegheny County Jail from Caption (ECF No. 22), filed by Defendants Allegheny County and Rich Fitzgerald, be granted, and the Allegheny County Jail be stricken from the caption and the Complaint be dismissed with prejudice as to Defendants County of Allegheny and Rich Fitzgerald.

### II.    REPORT

#### A.    Factual Background/Procedural History

On or about November 17, 2014, Plaintiff Frederick Banks ("Banks"), proceeding pro se, filed this action in the Court of Common Pleas of Allegheny County, Pennsylvania, at Case No. GD-14-021024.  Plaintiff describes himself as an American Indian and member of the Lakota Sioux Tribe and a Tribal Official of the United Tribes

of America. Compl., Intro. (ECF No. 1-2 at 3). In addition, Plaintiff states he is a second degree wicca, warlock high priest, and witchcraft practitioner. *Id.*

Named as defendants in this action are Orlando Harper, Warden, Allegheny County Jail; Rich Fitzgerald, County Executive; County of Allegheny; Case Manager Schenk; Unit Manager 40, Cyndy McSwiggin, Supervisor; and the Allegheny County Jail ("ACJ").[1] Defendants Orlando Harper, Case Manager Schenk, and Unit Manager 40 McSwiggin have been dismissed from this case by Order of Court (ECF No. 33) dated February 11, 2016, based on Plaintiff's failure to effectuate and/or file proper proof of service pursuant to Rules 4(*l*) and (m). Thus, the only Defendants remaining in this action are Rich Fitzgerald, the County of Allegheny (the "County" or "Allegheny County"), and the ACJ (collectively, the "County Defendants"). Plaintiff is suing Rich Fitzgerald in his official and individual capacities.

Plaintiff's claims against the County Defendants and allegations in support are summarized as follows.

On September 30, 2014, Plaintiff alleges that he was transferred to the ACJ by the Director of the United States Marshal Service ("USMS"). Compl. at ¶1. Plaintiff further alleges that he was held beyond his prison sentence expiration date of October 20, 2014

---

[1] In addition to the County Defendants, the Complaint names a number of federal officials, agencies and judges, as well as the United States of America as defendants. The undersigned has issued a Report and Recommendation on February 16, 2016 (ECF No. 34) recommending that the motion to dismiss filed by the Federal Defendants be granted and the Complaint dismissed as to them with prejudice.

in violation of the Fifth and Eighth Amendments.[2]  *Id.*  Plaintiff further alleges that "Defendants acted with deliberate indifference because the warden, USMS and case manager failed to correct this."  *Id.*

In October 2014, Plaintiff contends  that while incarcerated at ACJ, (1) Case Manager Schenk denied him access to the courts by preventing him from placing legal calls and by failing to have his legal and personal mail from NEOCC forwarded to ACJ; (2) the cashier failed to provide him with an indigent pack containing a pen and six first class envelopes as required by the inmate handbook; (3) the prison chaplain failed to procure various wiccan tools and a wiccan bible, and "Defendants" failed to provide a "volunteer wiccan chaplain", all of which prevented him from practicing his religion; and (4) that personal hygiene products/services were either inadequate (one unsanitized electric razor was shared by 120 inmates) or unavailable (a haircut and a new working shower).  Compl. at ¶¶3-8.  As a result of the conduct set forth in clauses (1) and (2) above, Plaintiff contends that the County Defendants violated his rights under the Equal Protection (class of one) and Due Process clauses of the Fifth, and Fourteenth Amendments, the right to association under the First Amendment, and obstructed his access to the courts by preventing him from litigating his civil actions

---

[2] On October 29, 2014, Plaintiff was released on bail from the ACJ to the custody of the U.S. Probation Office, and ordered to report to the Renewal Center to commence service of his supervised release, in accordance with the terms and conditions of the judgment issued by Chief Judge Joy Flowers Conti in Criminal Action No. 04-176.  *See* W.D.Pa. Crim. No. 03-245, Order dated 10/28/14 (ECF No. 672).  Although these facts are not pled in the Complaint, the Court may take judicial notice of information contained in public court records in deciding a motion to dismiss.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)* (citations omitted).

pending in Allegheny County Court of Common Pleas and federal court, and in defending himself in federal court criminal cases, all in violation of the First Amendment Retaliation Clause, Right to Petition the Government for Redress of Grievances, Fifth and Fourteenth Amendments. *Id.* at ¶¶ 3, 8-9. As to the conduct alleged in clause (3) above, Plaintiff asserts that the County Defendants violated the Free Exercise and Establishment Clauses of the First Amendment, the Fourteenth Amendment, as well as the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5. Compl. at ¶¶ 6-7. As a result of the conduct alleged in clause (4) above, Plaintiff contends that the County Defendants violated the Eighth Amendment. *Id.* at ¶ 5. Plaintiff claims to have exhausted all administrative remedies with regard to his complaints about the conditions of his confinement at ACJ. Compl. at ¶2.

For relief, Plaintiff seeks money damages in the amount of $10 million for each violation, totaling $60 million, as well as punitive damages in the total amount of $180 million, plus costs, interest and fees. Compl. at ¶11. Plaintiff also requests declaratory relief ending the alleged violations. *Id.*[3]

---

[3] Plaintiff also sets forth a separate claim against "Defendant's" under the "bad men" clause of Article I of the Sioux Treaty of Fort Laramie, 15 Stat. 635 (1868) ("Sioux Treaty"). *See* Compl. at ¶12. In that same paragraph, Plaintiff goes on to state that he seeks to recover damages of $10,000 on this claim against the United States of America under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and for an order authorizing the Commissioner Director of Indian Affairs at the Bureau of Indian Affairs to "cause the offenders to be arrested and punished according to the laws of the United States" and to reimburse him for the loss sustained. *Id.* To the extent Plaintiff is attempting to assert

On January 30, 2015, the United States of America removed this action to federal court pursuant to 28 U.S.C. §§ 1442 and 1446.  After several orders directing Plaintiff to effectuate service on the County Defendants and file proper proof of same, *see* ECF Nos. 13, 14, and 26, Plaintiff filed the executed waiver of service of summons returned by the County of Allegheny on October  16, 2015 (ECF No. 19).[4]  However, Plaintiff failed to demonstrate proper proof of service on Defendants Fitzgerald, Harper, Schenk, and McSwiggin after several extensions and, consequently, the Court dismissed Defendants Harper, Schenk and McSwiggin from the Complaint without prejudice on February 11, 2016 (ECF No. 33).[5]

On November 16, 2015, the County of Allegheny and Rich Fitzgerald filed a motion to dismiss the Complaint against them, and to strike Defendant ACJ from Caption (ECF No. 22)  In response, Plaintiff filed a timely Reply in Opposition to the

---

this claim against Allegheny County and Rich Fitzgerald, it fails, as a matter of law, for the same reasons as those set forth in the Report and Recommendation,  *see* ECF No. 34 at pages 18-24.  In addition, the Court notes that the only remaining County defendant against whom such a claim could potentially be asserted is Rich Fitzgerald, as claims under the Sioux Treaty can only be brought against individuals.  *See* ECF No. 34 at 23 (citing *Richard v. United States*, 677 F.2d 1141, 1153 (Fed. Cir. 2012). The Complaint is completely devoid of any allegations of wrongdoing by Rich Fitzgerald; the only place his name appears in the Complaint is in the caption.

[4] Counsel for Defendant Rich Fitzgerald claims that he also returned an executed waiver of service from Fitzgerald, but inexplicably, Plaintiff never filed it with the Court.  *See County's Br. in Supp. of Mot. to Dismiss* at 4 (ECF No. 23).

[5] Since Defendant Fitzgerald joined in the motion to dismiss which is the subject of this Report and Recommendation, the undersigned did not recommend in ECF No. 28 that he be dismissed from the Complaint based on Plaintiff's failure to comply with Rule 4(*l*) and (m), choosing instead to rule on the merits of the claims against him in this Report and Recommendation.  *See infra* Section II, Part C, Subpart 2.

Motion to Dismiss (ECF No. 25), to which Defendants filed a Reply (ECF No. 27). Thus, the motions are ripe for disposition.

### B. Legal Standard

The County of Allegheny and Rich Fitzgerald have moved to dismiss the Complaint against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that pleadings and, in particular, pro se complaints, are to be liberally construed. *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 322 (3d Cir. 2001)); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (holding that, when a plaintiff files a complaint pro se, the pleadings must be liberally construed and the Court must "apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name"). Indeed, a pro se complaint "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins*, 293 F.3d at 688 (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). See also *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution." (quoting *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993))). However, there are limits

to the court's procedural flexibility—"pro se litigants still must allege sufficient facts in their complaints to support a claim. . . they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly* at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. (citing *Twombly* at 556-57). The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in Iqbal:

> After *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id*. at 1949-50; *see also Twombly*, 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

C. **Analysis**

Although Plaintiff does not specifically cite to 42 U.S.C. §1983 in his Complaint, he alleges violations of rights under federal law and the U.S. Constitution, and therefore, the Court will treat the Complaint as one brought under Section 1983 with regard to the County Defendants. *See Godfrey v. Adamo*, Civ. A. No. 13-719, 2014 WL 3453846, *3 (W.D.Pa. July 15, 2014) (treating complaint that sought to vindicate

plaintiff's constitutional rights but failed to mention Section 1983 as one invoking the court's jurisdiction pursuant to Section 1983) (citing *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006)) (other citations omitted).  In order to "state a claim of liability under §1983, [a plaintiff] must allege that [he] was deprived of a federal constitutional or statutory right by a state actor." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (citation omitted). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . , subjects, or causes to be subjected, any citizen of the United States of any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  Therefore, to state a claim for relief under §1983, a plaintiff must demonstrate both that the defendants were acting under color of state law and that a constitutional violation was directly caused by their conduct.  *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

The County Defendants do not predicate dismissal of Plaintiff's Section 1983 claims on the first requirement—whether they are state actors.  Thus, for purposes of deciding their motion to dismiss, the Court assumes without deciding that the first

requirement has been met. Therefore, the Court will examine whether plausibly, the

Complaint alleges sufficient facts to suggest that Plaintiff was deprived of a

constitutional right as a result of the actions of the County Defendants.

1. **Claims Against County of Allegheny**

a. **Municipal Liability Under** *Monell*

The Supreme Court recently reiterated the requirements for municipal liability in

*Connick v. Thompson*:

> A municipality or other local government may be liable
> under [section 1983] if the governmental body itself
> "subjects" a person to a deprivation of rights or "causes" a
> person "to be subjected" to such deprivation. *See Monell v.
> New York City Dept. of Social Servs.*, 436 U.S. 658, 692, 98 S.Ct.
> 2018, 56 L.Ed.2d 611 (1978). But, under § 1983, local
> governments are responsible only for "their own illegal
> acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292,
> 89 L.Ed.2d 452 (1986) (citing *Monell*, 436 U.S., at 665–683, 98
> S.Ct. 2018). They are not vicariously liable under § 1983 for
> their employees' actions. *See id.*, at 691, 98 S.Ct. 2018; *Canton*,
> 489 U.S., at 392, 109 S.Ct. 1197; *Board of Comm'rs of Bryan Cty.
> v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626
> (1997) (collecting cases).
>
> Plaintiffs who seek to impose liability on local governments
> under § 1983 must prove that "action pursuant to official
> municipal policy" caused their injury. *Monell*, 436 U.S., at
> 691, 98 S.Ct. 2018; see *id.*, at 694, 98 S.Ct. 2018. Official
> municipal policy includes the decisions of a government's
> lawmakers, the acts of its policymaking officials, and
> practices so persistent and widespread as to practically have
> the force of law. *See ibid.*; *Pembaur, supra*, at 480–481, 106 S.Ct.
> 1292; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168, 90
> S.Ct. 1598, 26 L.Ed.2d 142 (1970). These are "action[s] for
> which the municipality is actually responsible." *Pembaur,
> supra*, at 479–480, 106 S.Ct. 1292.

*Connick v. Thompson*, 563 U.S. 51, 60-61 (2011).[6]

Thus, to establish municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Monell*, 436 U.S. at 690-91. A municipal policy is deemed to have been made "when a 'decision-maker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edit." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur*, 475 U.S. at 481). On the other hand, a custom or practice can be found with no official declaration, and can be demonstrated in one of two ways:

> First, custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990); *accord Beck*, 89 F.3d at 971. Secondly, "[c]ustom ... may also be established by evidence of knowledge and acquiescence" by the final policymakers in the area. *Beck*, 89 F.3d at 971 (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir.1989)). However, a plaintiff need not identify knowledge and acquiescence of a practice so "permanent and well settled" as to have "the force of law," *Monell*, 436 U.S. at 691, 98 S.Ct. 2018, since such customs are "ascribable to municipal decisionmakers." *Bielevicz*, 915 F.2d at 850 (internal quotations omitted) (quoting *Anela v. City of Wildwood*, 790 F.2d 1063, 1067 (3d Cir.1986)); *see also id.* at 853 ("Such well-established custom exists only with the approval or, at the very least, with the sufferance of policymakers"). A plaintiff cannot prove a custom simply by citing one instance of the custom asserted. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir.1995); *Fletcher*, 867 F.2d at 793. However, a showing that a well-established practice

---

[6] In *Monell*, the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. 436 U.S. at 690 (footnote omitted).

exists, and that the municipality has done nothing to end or
change the practice, supports a finding of a custom
attributable to the municipality. *See Bielevicz*, 915 F.2d at 852–
53 (finding no basis for a directed verdict in favor of a
municipality upon such a showing at trial).

*Izquierdo v. Sills*, 68 F.Supp. 2d 392, 406 (D. Del. 1999). *See also Berg v. County of
Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (To establish municipal liability based upon a
custom or practice, the plaintiff must demonstrate that the decision-maker had notice
that a constitutional violation could occur and that the decision-maker acted with
deliberate indifference to this risk.).

Finally, "[i]n addition to identifying a policy or custom, a plaintiff bears the
burden of proving that the municipal practice in question was the proximate cause of
the violation of his constitutional rights." *Hodinka v. Delaware Cnty.*, 759 F.Supp. 2d 603,
615-16 (E.D.Pa. 2011) (citing *Bielevicz*, 915 F.2d at 850). To do so, the plaintiff must show
either an "affirmative link" or "plausible nexus" between the custom or practice and the
alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51. So long as this link is
not too tenuous, whether the municipality was the proximate cause of the constitutional
violation and thus the injury to the plaintiff, is a matter left to the jury. *Id.* at 851 (citing
*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). *See also Bd. of the Cnty. Comm'rs
of Bryan Cnty.*, 520 U.S. at 404 ("The plaintiff must also demonstrate that, through its
deliberate conduct, the municipality was the 'moving force' behind the injury alleged.
That is, a plaintiff must show that the municipal action was taken with the requisite
degree of culpability and must demonstrate a direct causal link between the municipal
action and the deprivation of federal rights.").

Initially, the County of Allegheny argues that the allegations in the Complaint fail to identify a particular policy or custom that was violated or fail to assert that the conduct which allegedly violated Plaintiff's rights was caused by a County policy or custom. Having failed to articulate any policy or custom on the part its part, the County submits that the Complaint *a fortiori* fails to show that any policy or custom (whatever it was) evidenced deliberate indifference and/or caused Plaintiff constitutional harm. As such, the County maintains that the Complaint fails to make out a facially plausible claim of civil rights liability on its part and therefore, the Complaint should be dismissed.

In response, Plaintiff states merely that his alleged failure to plead the requisite elements of a policy or custom claim is not fatal to all of his assertions against the County. Pl.'s Reply in Opp'n to Mot. to Dismiss Compl. ("Pl.'s Reply") at ¶2 (ECF No. 25). The Court views this statement as an admission that Plaintiff has failed to plead the requisite elements, and more importantly, that he cannot identify or plead the requisite elements of policy or custom.[7] Accordingly, as the Complaint is devoid of any

_____

[7] The Court notes that although Plaintiff is proceeding pro se in this litigation, he is an experienced litigant (having filed well over 300 civil actions nationally since November of 2004, *see* W.D.Pa. No. 2:13-cv-1198, ECF No. 7 at 7, and more than 75 in this District alone since February 2005, *see* W.D.Pa. No. 2:15-cv-1385, ECF No. 7 at 6), and has not refrained from asserting any and all arguments available to him in the past, no matter how frivolous or vexatious (*see* Order designating Plaintiff as a vexatious litigant, W.D.Pa. No. 2:15-cv-1385, ECF No. 7 at 7). Thus, the fact that Plaintiff has not attempted to identify a policy or custom in his response to the motion to dismiss, after having the benefit of Defendants' brief in support of their motion, indicates to this Court that he cannot identify a policy or custom that was allegedly violated here, and therefore, leave to amend his Complaint to state a *Monell* claim against the County would be futile.

factual allegations to establish a facially plausible claim under *Monell* against the County, the Court recommends that the Complaint against the County be dismissed with prejudice.

Inasmuch as this Court has determined that the Complaint is devoid of any factual allegations to establish a facially plausible claim under *Monell* against the County, the Court need not reach the County's additional arguments.[8]

### b.    Claim Against ACJ

The County also moves to strike ACJ from the caption because the County contends that ACJ is not separate from the County and is not an independent entity capable of being sued under Section 1983.  The County relies, in part, on 61 P.S. § 390.715 (authorizing counties to acquire, maintain, operate, own and/or lease, any county or multicounty regional prison facility); 16 Pa. Cons. Stat. Ann. §§1721-1726 (establishing county jail oversight boards for second class counties[9] and setting forth

---

[8] Nonetheless, the County is correct that punitive damages may not lie against a municipal defendant, *see City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004), and pleading specific dollar amounts of unliquidated damages is improper under LCvR 8 as a matter of law, *Brown v. Joseph McCormick Constr. Co., Inc.*, Civ. A. No. 14-27E, 2014 WL 6612892, *  (W.D.Pa. Nov. 20, 2014) (plaintiff's request for "aggregate damages of not less than $1,000,000.00" was struck from the complaint as it was found to violate Western District of Pennsylvania Local Rule 8, which states that ""[n]o part shall set forth in a pleading originally filed with this Court a specific dollar amount of unliquidated damages in a pleading except as may be necessary to invoke the diversity jurisdiction of the Court or otherwise comply with any rule, statute or regulation which requires that a specific amount in controversy be pled in order to state a claim for relief or to invoke the jurisdiction of the Court."). In addition, Plaintiff's treaty-based claim against the County fails as a matter of law.  *See* Note 3, *supra*.

[9] The Court takes judicial notice of the fact that the County of Allegheny is a second

14

inter alia their administrative powers and duties); 16 P.S. § 3202(2) (providing that counties can sue and be sued).

One of the cases cited by the County, *Vuocolo v. Clinton County Correctional Facility*, is instructional here:

> [W]e note that [plaintiff] may not maintain a prisoner civil rights action against the county prison as an institution. Rather, inmate civil rights actions under 42 U.S.C. § 1983 may only be brought against: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983 (emphasis added).
>
> Thus, § 1983 expressly limits liability to persons who violate constitutional rights, a limitation that courts have construed as not reaching county jails as institutions. In short, "the 'County Jail' is not a proper defendant in this § 1983 case[ ], because it is not a 'person.' *See Grabow v. Southern State Correctional Facility*, 726 F.Supp. 537, 538–39 (D.N.J.1989) (stating that New Jersey Department of Corrections and state prison facilities not "persons" under § 1983); *Mitchell v. Chester County Farms Prison*, 426 F.Supp. 271, 274 (D.C.Pa.1976); *see also Marsden v. Federal BOP*, 856 F.Supp. 832, 836 (S.D.N.Y.1994) (county jail not an entity amenable to suit under 42 U.S.C. § 1983); *Powell v. Cook County Jail*, 814 F.Supp. 757, 758 (N.D.Ill.1993) (Cook County Jail not a 'person' under § 1983); *McCoy v. Chesapeake Correctional Center*, 788 F.Supp. 890, 893–94 (E.D.Va.1992) (local jail not a 'person' under § 1983)." *Crooks v. Passaic County Sheriff's Dep't/Jail*, CIV. 07–0092(FSH), 2007 WL 923330 (D.N.J. Mar.

---

class county. *See* http://www.alleghenycounty.us/About/History/County-Government.aspx, last visited February 22, 2016. *See also* 16 P.S. § 3210(2) (designating counties with populations between 800,000 and 1.5 million as second class counties). According to the County's official website, it has a population of approximately 1.3 million.

26, 2007). *See also, Thomas v. Wilbert*, CIV.A. 09–4796 GEB,
2011 WL 91001 (D.N.J. Jan.11, 2011) ("County Correctional
Institution is not a proper defendant in a § 1983 case and
must be dismissed from this action"). This limitation on the
reach of proper defendants in an Eighth Amendment
conditions of confinement claim compels dismissal of this
particular conditions of confinement claim, as stated in this
pro se complaint, with respect to the county jail, which is not
a proper defendant in a civil rights action brought under §
1983.

*Vuocolo v. Clinton Cnty. Correctional Facility*, Civ. No. 3:12-CV-2434, 2013 WL 572444, *4

(M.D.Pa. Jan. 24, 2013).

The above jurisprudence clearly establishes that ACJ is not a proper defendant in

this action, and therefore, the Court recommends that the County's motion to strike ACJ

from the caption be granted.

### 2. Claims Against Rich Fitzgerald

As a preliminary matter, Defendant Fitzgerald maintains that the Complaint

should be dismissed for failure to prove sufficient service of process on him as required

by Rule 4. Therefore, Fitzgerald maintains, that Plaintiff has failed to establish personal

jurisdiction over him and thus moves the Court to dismiss the claims against him

pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5).

It is clear from the docket that Plaintiff filed the waiver of service of process

executed by Allegheny County (ECF No. 19), and that Assistant Allegheny County

Solicitor, Paul Dachille, Esquire, entered an appearance for both the County and Rich

Fitzgerald on October 8, 2015 (ECF No. 18). Absent from the docket, however, is a

waiver executed by, or other proper proof of service on, Rich Fitzgerald.[10]

Although Defendant Fitzgerald's procedural argument is likely sustainable, the Court declines to address it, opting instead to consider his arguments on the merits of Plaintiff's claims. As Defendant Fitzgerald is represented by the same counsel who represents Allegheny County, *see* ECF No. 18, his counsel was aware of the lawsuit and the claims asserted against him. Thus, any prejudice to him in deciding the motion on the merits (rather than on procedural grounds) is minimal and will serve to expedite the disposition of this lawsuit. Therefore, the Court turns to the alternative arguments advanced by Defendant Fitzgerald on the merits of Plaintiff's claims against him.

### a. Claims Against Fitzgerald in his Official Capacity

Plaintiff has sued Defendant Fitzgerald in both his official and individual capacities. Fitzgerald argues that the official capacity suit should be dismissed because it duplicates Plaintiff's municipal suit against Allegheny County, i.e., it is merely an alternative way of pleading an action against a municipality. In support, Fitzgerald relies on *Monell*, 436 U.S. at 690 n. 55; *Daniels v. Taylor*, Civ. No. 13-5510, 2014 WL 3955372, *3 (D.N.J. Aug. 13, 2014) (citing *Monell*); and *Blair v. City of Pittsburgh*, Civ. A. No. 14-1473, 2015 WL 4162400, *4 (W.D.Pa. July 9, 2015) (citation omitted). Moreover, because Plaintiff's official capacity claim against Fitzgerald is barred as a matter of law,

---

[10] Fitzgerald's counsel submits that he returned, via mail, executed waivers of service of summons for Defendants Allegheny County and Fitzgerald, but for some unknown reason, Plaintiff only filed the waiver executed by Allegheny County. *See* Br. Supp. Mot. to Dismiss at 4 (ECF No. 23). The Court has not considered this representation in deciding the motion to dismiss, however, as it contains factual allegations not asserted in the Complaint.

Fitzgerald submits that no amendment can cure it, and therefore, it should be dismissed with prejudice. Plaintiff fails to respond to this argument.

When a government official is sued in his official capacity, the real party in interest is the government entity that employs him. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Therefore, a civil action brought against government officials in their official capacity is deemed an action against the government entity. *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Accordingly, Plaintiff's claims against Defendant Fitzgerald in his official capacity are, in essence, claims against Allegheny County, which this Court has determined are not facially plausible. *See supra* Section II, Part C, subpart 1.a.[11]

As well established precedent clearly precludes Plaintiff from maintaining claims against Defendant Fitzgerald in his official capacity, the Court recommends that the official capacity claims against Fitzgerald be dismissed with prejudice.

### b.    Claims Against Fitzgerald in his Individual Capacity

Defendant Fitzgerald further argues that the claims against him in his individual capacity must also be dismissed, as the Complaint does not contain any facts indicating that he personally participated in violating Plaintiff's rights, either directly or in a supervisory capacity, or by establishing and maintaining a policy or procedure that directly caused constitutional harm to Plaintiff, or failing to implement an appropriate

---

[11] Moreover, "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law.'" *Hafer*, 502 U.S. at 25 (citing *Graham*, 473 U.S. at 166) (quoting *Monell*, 436 U.S. at 694)). As noted above, Plaintiff has failed to identify any policy or custom of the County, let alone allege facts to suggest that said policy or custom played a part in the violation of any federal law.

supervisory policy or procedure.   Plaintiff responds to this argument merely by stating that "Fed. R. Civ. P. 8 requires a Complaint be a plain and concise statements of the allegations, thus personal involvement of Fitzgerald is a jury question . . .."   Pl.'s Reply at ¶3 (ECF No. 25).

The problem with Plaintiff's argument is that he completely ignores the fact that the Complaint does not contain *any* allegations of personal involvement on the part of Fitzgerald.  Indeed, the only place where Fitzgerald's name appears is in the caption.  This is fatal to his claims against Fitzgerald in his individual capacity.

Precedent makes clear that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981) (other citation omitted)); *see also C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir.2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201–02 (3d Cir.2000) (en banc)).  A plaintiff must aver this personal involvement through allegations of participation, personal direction, or actual knowledge and acquiescence.  *Rode*, 845 F.2d at 1207.  These allegations "must be made with appropriate particularity."  *Id.  See also Iqbal,* 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Santiago v. Warminster Twp.*, 629 F. 3d 121, 130 (3d Cir. 2010)

("Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to 'demonstrate a 'plausible nexus' or 'affirmative link' between the [directions] and the specific deprivation of constitutional rights at issue.'") (quoting *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000)).

Here the Complaint falls woefully short of facts to suggest that either Fitzgerald personally was involved in the alleged constitutional violations or had actual knowledge of and acquiesced to a subordinate's violation. Indeed, Plaintiff has set forth no averments as to the personal participation, direction, or actual knowledge and acquiescence by Defendant Fitzgerald in the events surrounding the alleged violations of federal law and/or the constitution.

Moreover, Plaintiff's generic reference to all "defendants" throughout the Complaint is insufficient and does not give fair notice to any defendant of the specific grounds for the claims against him or her. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (discounting allegations against "defendants" because individual defendants could not ascertain which unconstitutional acts they were alleged to have committed); *Grieveson v. Anderson*, 538 F.3d 763,778 (7th Cir. 2008) (rejecting "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct"); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (rejecting allegation that defendants "engaged in certain conduct" where complaint "mak[es] no distinction among the fourteen defendants charged"). As such, Plaintiff's allegations are, at best, naked assertions or mere conclusory statements devoid of any factual support. *See Iqbal*, 556 U.S. at 678 (noting that courts should also

disregard "naked assertion[s] devoid of 'further factual enhancment'" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" (quoting *Twombly*, 550 U.S. at 557)).

Therefore, Plaintiff has failed to state facially plausible claims against Defendant Fitzgerald in his individual capacity. Any attempt to amend the Complaint under the facts presented by Plaintiff would be futile. Accordingly, the Court recommends that Plaintiff's claims against Defendant Fitzgerald in his individual capacity be dismissed with prejudice.[12]

### c. <u>Qualified Immunity</u>

Finally, Defendant Fitzgerald argues that he is entitled to qualified immunity and the Court agrees.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlan v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity operates to ensure that, before they are subjected to suit, government officials are put on notice that their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need

---

[12] Even if Plaintiff could somehow allege facts to show personal involvement by Defendant Fitzgerald in the alleged violations of Plaintiffs rights under the constitution and federal law, the Court still recommends dismissal of the individual capacity claims with prejudice, because, as explained below, Defendant Fitzgerald is entitled to qualified immunity.

to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818–19. "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna,* __ U.S. __, 136 S.Ct. 305, 308 (2015) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

     In determining whether qualified immunity applies, the courts conduct a two-pronged inquiry. *Pearson,* 555 U.S. at 232; *Spady v. Bethlehem Area Sch. Dist.,* 800 F.3d 633, 637 (3d Cir. 2015). First, the court must determine "whether the facts that the plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson,* 555 U.S. at 232 (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)); *Spady,* 800 F.3d at 637 (quoting *Pearson, supra*). "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [government official] is entitled to immunity." *Bennett v. Murphy,* 274 F.3d 133, 136 (3d Cir. 2002). If, however, the plaintiff can establish a constitutional violation, then the court must proceed to the second prong and determine "'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Spady,* 800 F.3d at 637 (quoting *Pearson,* 555 U.S. at 232). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202; *see also Berg v. County of Allegheny,* 219 F.3d 261, 272 (3d Cir. 2000) ("the question is whether 'a reasonable

officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession.'") (quoting *Sharrar v. Felsin*, 128 F.3d 810, 826 (3dCir. 1997)(other citations omitted)). "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). In conducting this analysis, courts have the discretion to decide which of the two prongs should be addressed first based on the circumstances of the particular case. *Pearson*, 555 U.S. at 236; *see also Spady*, 800 F.3d at 637 (citing *Pearson*).

A defendant has the burden to establish that he or she is entitled to qualified immunity. *Burns v. Pa. Dept. of Corrections*, 642 F.3d 163, 176 (3d Cir.2011). "[T]he defense of qualified immunity is available only for damages claims—not for claims requesting prospective injunctive relief." *Hill v. Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006). In the case at bar, although Plaintiff also requests "declaratory relief ending the violations," the only available remedy is money damages. Plaintiff's claims in this lawsuit are predicated on events that transpired during his incarceration at ACJ in October of 2014. Thus, Plaintiff's release from ACJ on October 29, 2014 effectively rendered his request for declaratory relief moot.

Defendant Fitzgerald submits that he has clearly shown that the Complaint, even when viewed most favorably to Plaintiff, fails to state a facially plausible claim that Fitzgerald violated Plaintiff's civil rights. In response, Plaintiff argues that Fitzgerald is not entitled to qualified immunity unless he can prove to a jury that the rights he violated in the U.S. Constitution were not clearly established. While Plaintiff correctly notes the second prong of the test, he completely ignores the fact that both prongs of the

test must be met to prevent the Court from granting Fitzgerald qualified immunity. Here, clearly, the first prong has not been satisfied.

Accordingly, the Court finds that Defendant Rich Fitzgerald is entitled to qualified immunity.

### D. <u>Curative Amendment</u>

The court of appeals in *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008), has ruled that if a court is dismissing a claim pursuant to 12(b)(6) in a civil rights case it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." *See also Day v. Florida*, 743 F.3d 40, 43 (3d Cir. 2014).

As it appears that Plaintiff cannot allege any facts to establish plausible claims against Allegheny County or Rich Fitzgerald, the Court finds that it would be futile to allow Plaintiff to amend his Complaint. Therefore, the Court recommends that all claims against Defendants Allegheny County and Rich Fitzgerald be dismissed with prejudice.

## III. <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss Complaint and to Strike Defendant Allegheny County Jail from Caption (ECF No. 22), filed by Defendants County of Allegheny and Rich Fitzgerald, be granted, and the Allegheny County Jail be stricken from the caption and the Complaint be dismissed with prejudice as to Defendants County of Allegheny and Rich Fitzgerald.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrate Judges, the parties are allowed

fourteen (14) days from the date of service of this Report and Recommendation to file objections thereto. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file timely objections shall constitute a waiver of any appellate rights.

Dated: February 24, 2016

BY THE COURT:

LISA PUPO LENIHAN
United States Magistrate Judge

cc:    Frederick Banks
       Allegheny County Jail
       #120759
       950 Second Avenue
       Pittsburgh, PA 15219
       *Via U.S. First Class Mail*

       All Counsel of Record
       *Via CM/ECF Electronic Mail*